JUDGE DAVID GUADERRAMA
**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

FILED
2022 JAN -3 AM11: 50

| | |
|---|---|
| **BRANDON CALLIER,** §<br>§<br>§<br>Plaintiff, §<br>§<br>v. §<br>§<br>**UNITED ALLIANCE GROUP, INC** d/b/a §<br>**REJUVENATE FINANCIAL SOLUTIONS** a §<br>Florida Corporation, **BSO GROUP, LLC,** §<br>**888 STRATEGIES, INC, WILLIAM L CHUNG** §<br>aka **WILLIAM CHUNG TABITHA LYNN** §<br>**LOGUE CHUNG** aka **TABITHA CHUNG** and §<br>**JACQUELINE DINH** §<br>§<br>Defendants. §<br>§ | **EP22CV0003** |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**PARTIES**

1.  The Plaintiff is BRANDON CALLIER ("Plaintiff") a natural person, resident of the Western

    District of Texas, and was present in Texas for all calls, in this case in El Paso County, Texas.

2.  Defendant UNITED ALLIANCE GROUP. INC d/b/a REJUVENATE FINANCIAL

    SOLUTIONS ("United") a Florida Corporation organized and existing under the laws of

    Florida and can be served via registered agent William Chung at 6300 N Wickham Road

    Suite 130#318 Melbourne, Florida 32940.

3.  Defendant BSO GROUP LLC d/b/a SYNERGY STUDENT SERVICES ("BSO GROUP") is

    an inactive Florida limited liability company and can be served via registered agent William

    Chung at 11248 History Avenue, Orlando, Florida 328832.

4.  Defendant 888 STRATEGIES INC, d/b/a SYNERGY STUDENT SERVICES ("Strategies")

1

is an inactive Florida limited liability company and can be serve via registered agent Spiegel & Utrera, 1840 SW 22nd St., 4th Floor, Miami, Florida 33145.

5. Defendant WILLIAM CHUNG ("Mr. Chung") is a natural person, resident of Florida, Chief Executive Officer of United, BSO Group, and Srategies and can be served at 11248 History Avenue, Orlando, Florida 32832.

6. Defendant TABITHA LYNN LOGUE CHUNG, aka Tabitha Chung ("Ms. Chung") is a natural person, resident of Florida, Officer of United, and can be served at 11248 History Avenue, Orlando, Florida 32832.

7. Defendant JACQUELINE DINH ("Dinh") is a natural person, resident of Florida, Officer of United, and can be served at 1787 Croghan Drive, Melbourne, Florida 32940.

## JURISDICTION AND VENUE

8. **Jurisdiction.** This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 302.101 because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case.

9. **Personal Jurisdiction.** This Court has general personal jurisdiction over the defendant because they have repeatedly placed calls to Texas residents, and derive revenue from Texas residents, and they sell goods and services to Texas residents, including the Plaintiff.

10. **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and

2

because the Plaintiff resides in this District. Residing in the Western District of Texas when he received a substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

11. This Court has venue over the defendants because the calls at issue were sent by or on behalf of the above-named defendants to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT

## OF 1991, 47 U.S.C. § 227

12. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

13. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

14. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

15. The TCPA provides a private cause of action to persons who receive calls in violation of §

3

227(b). 47 U.S.C. § 227(b)(3).

16. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

17. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

18. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

19. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

20. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

any good or service.

21. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

22. The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

23. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

24. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## The Texas Business and Commerce Code § 302.101

25. The Texas Business and Commerce code requires sellers to obtain a registration certificate

5

from the Secretary of State in order to make telephone solicitations inside the state of Texas or to residents located in the state of Texas.

26. The Plaintiff may seek damages for violations of Texas Business and Commerce Code § 302.101 of up to $5,000 per violation, reasonable costs of prosecuting the action, court costs, investigation costs, depositions expenses, witness fees, and attorney's fees.

27. Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

## FACTUAL ALLEGATIONS

28. Plaintiff has been on the Do-Not-Call Registry since December 2007.

29. Since 2015 Defendants United, BSO Group, Strategies, Mr. Chung, Ms. Chung, and Dinh have facilitated, marketed, and enabled the "Student Loan Forgiveness" activities and the collection of payments in advance of services rendered in violation of the Telemarketing Sales Rules (TSR). 16 C.F.R. § 310.4(a)(5)(i).

30. Mr. Chung and Ms. Chung have created a web of companies designed to confuse consumers and hide their true identities. These companies include Defendants United, BSO Group, and Strategies.

31. Synergy Student Services is a registered fictitious name in the state of Florida for both BSO Group and Strategies. Defendants Mr. Chung and Ms. Chung are officers of both BSO Group and Strategies.

32. The Plaintiff has received at least 40 calls over (2) months to his cell phone (915) 383-4604

without his prior express consent and not related to an emergency purpose, selling "Student

Loan Forgiveness" products and services of Defendant United.

33. Plaintiff did not want or need student loan forgiveness. However, in order to cease

harassment from the anonymous robocallers, such as defendants, Plaintiff told the

representative he needed student loan forgiveness for the sole purpose of identifying who

was calling and/or the company who was responsible for calling.

34. Defendants lead Plaintiff to believe these payments were being made to his student loan

services and did not inform Plaintiff these payments were for the services of Defendant

United, and not applied to his student loan balance.

35. Plaintiff received multiple calls from a variety of spoofed caller ID's that contained a

prerecorded message and were initiated using an automated telephone dialing system. The

calls were on behalf of Defendant United. The calls generally had a delay of 3-4 seconds of

dead air before an audible tone connected the Plaintiff to a representative, indicating the calls

were initiated using an ATDS.

36. On October 14, 2021, Plaintiff received a phone call with a prerecorded voice message

advertising student loan forgiveness. Plaintiff pressed "one" and was connected to a

representative who solicited Plaintiff on behalf of the Defendants. The representative lied to

Plaintiff and said he was an agent/employee of the Federal government. The representative

then asked Plaintiff for his email address and used this information to access Plaintiff's

student loan account at https://studentaid.gov. The representative did so without Plaintiff's

knowledge, authority or consent.

37. The representative in paragraph 36 changed Plaintiff's password without Plaintiff's

permission and used the changed password to illegally access Plaintiff's personal

7

information.

38. The representative/agent/employee of the Defendants asked Plaintiff to pay $1,500 upfront in violation of the TSR. The representative mislead Plaintiff into believing the $1,500 Plaintiff was being asked to pay upfront would be applied to Plaintiff's student loan balance. It was only after Plaintiff received the contract in the mail that Plaintiff learned the payment would be paid to Defendants and not towards his student loan balance. C.F.R. § 310.3(a)(1)(i).

39. On October 22, 2021, Plaintiff received another phone call from Defendants. The phone call came from spoofed phone number 800-950-5114. Plaintiff later researched this phone number and learned the phone number belongs to Citi and the Defendants had spoofed the caller ID.

40. Plaintiff answered the phone call referenced in paragraph 39 and heard a prerecorded voice message playing advertising "student loan forgiveness." When Plaintiff pressed "one" he was connected to a representative of the Defendants who again solicited Plaintiff, reset Plaintiff's password, pretended to be a federal employee, asked Plaintiff to pay up front for services not rendered, and illegally accessed Plaintiff's personal information. The Defendant sent Plaintiff an email containing a contract from the Defendants during this phone call.

41. The Defendants representative made repeated calls to Plaintiff asking Plaintiff to sign the contract without providing Plaintiff with enough time to read the contract or research the company or the claims made by the Defendants' representative. The representative kept telling Plaintiff how "urgent" it was to sign the documents in an attempt to get Plaintiff to sign the documents without reading them.

42. Plaintiff had received a number of phone calls from phone number 786-530-6084 that he was unsure of the origin. On December 26, 2021, Plaintiff called the number to see who was

8

behind the calls. On December 29, 2021, The Defendants representative called Plaintiff back and told Plaintiff he worked with Synergy Student Services. The representative solicited Plaintiff for "Student loan forgiveness." Plaintiff told the representative he was interested in order to get the representative to send Plaintiff a contract. The representative emailed Plaintiff a contract that listed Synergy Student Services and Defendant United as the culprits.

43. Table below displays calls made to plaintiff by defendants:

| Date | Time | Caller ID |
|------|------|-----------|
| 9/20/2021 | 1:37 PM | 800-950-5114 |
| 9/20/2021 | 12:12 PM | 800-950-5114 |
| 10/14/2021 | 11:57 AM | 786-530-6084 |
| 10/14/2021 | 12:03 PM | 786-530-6084 |
| 10/14/2021 | 12:18 PM | 915-443-9206 |
| 10/14/2021 | 4:41 PM | 786-530-6084 |
| 10/15/2021 | 3:55 PM | 786-530-6084 |
| 10/15/2021 | 4:08 PM | 786-530-6084 |
| 10/15/2021 | 4:20 PM | 786-530-6084 |
| 10/15/2021 | 4:40 PM | 786-530-6084 |
| 10/18/2021 | 1:56 PM | 817-736-3783 |
| 10/18/2021 | 2:55 PM | 786-530-6084 |
| 10/18/2021 | 2:01PM | 915-726-7552 |
| 10/18/2021 | 6:33 PM | 786-530-6084 |
| 10/22/2021 | 9:52 AM | 800-950-5114 |
| 11/17/2021 | 12:58 PM | 800-950-5114 |
| 11/17/2021 | 4:23 PM | 800-950-5114 |
| 11/18/2021 | 8:24 AM | 800-950-5114 |
| 11/18/2021 | 8:25 AM | 800-950-5114 |
| 11/18/2021 | 10:02 AM | 800-950-5114 |
| 11/18/2021 | 10:04 AM | 800-950-5114 |
| 11/18/2021 | 10:05 AM | 800-950-5114 |
| 11/18/2021 | 10:46 AM | 800-950-5114 |
| 11/19/2021 | 11:29 AM | 800-950-5114 |
| 11/24/2021 | 2:25PM | 915-205-7217 |
| 11/24/2021 | 3:41PM | 915-205-7217 |

| Date | Time | Caller ID |
|------|------|-----------|
| 11/24/2021 | 3:51PM | 915-205-7217 |
| 11/24/2021 | 4:30PM | 915-205-7217 |
| 11/30/2021 | 2:54PM | 915-205-7217 |
| 12/2/2021 | 7:53AM | 915-205-7217 |
| 12/2/2021 | 11:17AM | 915-205-7217 |
| 12/2/2021 | 11:18AM | 915-205-7217 |
| 12/2/2021 | 11:23AM | 915-205-7217 |
| 12/3/2021 | 8:55AM | 915-205-7217 |
| 12/3/2021 | 2:57PM | 915-205-7217 |
| 12/3/2021 | 3:31PM | 915-205-7217 |
| 12/3/2021 | 3:32PM | 915-205-7217 |
| 12/3/2021 | 3:37PM | 915-205-7217 |
| 12/9/2021 | 9:53AM | 915-205-7217 |
| 12/9/2021 | 10:02AM | 915-205-7217 |

44. Defendants collectively knowingly and willfully mislead Plaintiff with respect to the forgiveness of his student loans.

45. Defendants do not have a solicitation registration certificate on file with the Texas Secretary of State as required to make telephone solicitations to Texas residents. Plaintiff is a Texas resident.

46. Defendants initiated numerous unsolicited telephone calls, including robocalls with prerecorded voice messages, made unlawful telemarketing sales pitches regarding student loan forgiveness, misrepresented themselves as federal employees and/or agents, unlawfully collected payments upfront, unlawfully collected Plaintiff personal information, such as social security number, email address, address, credit card issuer, bank account number, bank account routing number, and home address.

47. Defendants participated in, facilitated, directed, authorized, knew of, or willfully ignored the unlawful robocalling, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-

10

conspirators to engage in the false and misleading sales practices and unlawful robocalling.

48. Each and every call was placed without the maintenance of an internal do-not-call policy. Each and every call failed to identify the telemarketers and parties they were calling on behalf of. Each and every call was placed without training their agents/employees on the use of an internal do-not-call policy.

49. Mr. Callier has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

50. No emergency necessitated the calls.

51. None of the defendants ever sent Mr. Callier any do-not-call policy. Plaintiff sent internal do-not-call policy requests to info@rejuvenatefinancial.com and info@synergystudent.com.

52. On information and belief, the Defendants did not have a written do-not-call policy while it was sending Mr. Callier the unsolicited calls,

53. On information and belief, the Defendants did not train its agents who engaged in telemarketing on the existence and use of any do-not-call list.

## THE SELLERS SHOULD BE HELD LIABLE TO UPHOLD THE
## DETERRENT EFFECT AND PURPOSE OF THE TCPA

54. As the court ruled in Jackson v Caribbean Cruise Line, Inc., the defendant sellers should be held liable for their violations of the TCPA. Courts have looked at the purpose of the TCPA and found that not holding the sellers liable through vicarious liability would undermine the purpose of the TCPA.

## COMMON ENTERPRISE

55. Defendants United, BSO Group, Strategies, Mr. Chung, Ms. Chung, and Dinh have operated

as a common enterprise while engaging in the deceptive acts and practices and other violations of law alleged herein. Defendants have conducted the business practices herein through an interrelated network of companies that have common ownership or officers, business functions, employees, office locations, and that have commingled funds. Because these Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged herein. Defendants Mr. Chung, Ms. Chung, and Dinh have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendants United, BSO Group, and Strategies that constitute the common enterprise.

**DEFENDANTS MR. CHUNG, MS. CHUNG AND DINH ARE PERSONALLY LIABLE**

56. "If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable. See *United States v Pollution Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985)

57. The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." *General Motos Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992). The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct....or the 'central figure' in the challenged corporate activity." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)

58.   Quoting Texas v. American Blastfax:

> The Court finds the above principles applicable to the TCPA that is, an officer may be
> personally liable under the TCPA if he had direct, personal participation in or
> personally authorized the conduct found to have violated the statute, and was not
> merely tangentially involved. Individuals who directly (and here, knowingly and
> willfully) violate the TCPA should not escape liability solely because they are
> corporate officers. As the State persuasive argues, to hold otherwise would allow the
> individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and
> repeat their conduct. Congress surely did not intend to permit such a result in passing
> the TCPA.
>
> To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" an the
> "central figures" behind the TCPA violations. They were the two persons who
> controlled all of Blastfax's day-to-day operations. They both had direct, personal
> involvement in and ultimate control over every aspect of Blastfax's wrongful contuct
> that violate the TCPA, and/or directly controlled and authorized this conduct. And
> they did so with their eyes and pocketbooks wide open. After October 5, 2000, Greg
> and Michael Horne had good reason to believe they were running a business that
> violated the TCPA. On February 9, 2001, they knew they were. Yet they continued
> to direct their company to send unsolicited intrastate fax advertisements. This is fare
> more than a simple derivative liability case. Accordingly, the Court *899 holds
> defendants Greg and Michael Horne are jointly and severally liable with Defendant
> Blastfax, Inc., for all TCPA damages in this lawsuit." Texas v. American Blastfax,
> Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001)

59.   The Same Court held that corporate officers were also personally liable for DTPA
violations

> The State contends Greg and Michael Horne are personally liable for any DTPA
> damages because they were solely responsible for the violating conduct.....For the
> same reasons discussed in finding the individual defendants personally liable under
> the TCPA, the Court agrees. See, e.g., *Barclay v. Johnson*, 686 S.W.2d 334, 336-37
> (Tex. Civ. App.-Houston [1ST Dist.] 1985, no writ) (finding personal liability for
> corporate officer in DTPA misrepresentation claim, based on general rule that "a
> corporate agent knowingly participating in a tortious of fraudulent act may be held
> individually liable, even though he performed the act as an agent for the
> corporation......Accordingly, the Court finds defendants American Blastfax, Inc.,
> Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages

for their violations of the DTPA." *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001

60. At all times material to the Complaint, acting alone or in concert with others, Defendant Mr. Chung has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendant United, Defendant GSO Group and Defendant Strategies, including the acts or practices set forth in this Complaint.

61. At all times material to the Complaint, acting alone or in concert with others, Defendant Ms. Chung has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendant United, Defendant GSO Group, and Defendant Strategies, including the acts or practices set forth in this Complaint.

62. At all times material to the Complaint, acting alone or in concert with others, Defendant Dinh has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendant United, Defendant GSO Group and Defendant Strategies, including the acts or practices set forth in this Complaint.

63. Defendants Mr. Chung, Ms. Chung and Dinh are the principal directors and operators of Defendants United, GSO Group, and Strategies and control the day-to-day operations of United, GSO Group, and Strategies and directed their employees, agents, salespersons, and solicitors to make TCPA violating phone calls and to solicit "student loan forgiveness" and "student loan consolidation" services.

64. Defendants Mr. Chung, Ms. Chung, and Dinh approved the telemarketing scripts, signed the contracts, paid commissions for the illegal behavior, and directed the illegal calls to be made for their financial benefit.

65. Defendants collect their fees for the "student loan forgiveness" and "student loan consolidation" through a credit card payments and authorized checks processed prior to

14

providing any services. This is an unlawful payment processing scheme that collects payments in advance of services rendered in violation of the TSR. 16 C.F.R. § 310.2(cc) and 16 C.F.R. § 310.4(a)(5)(i).

66. Defendants Mr. Chung, Ms. Chung, and Dinh knew the collection of fees before rendering service illegal.

67. Defendants Mr. Chung, Ms. Chung and Dinh knowingly and willfully ignore the law. They solicit the services of student loan forgiveness and collect money upfront before any services are performed or any debts are forgiven. The violations are the direct result of the instructions Defendants have given to their agents, employees, solicitors, salespersons, and others that carry out their schemes.

68. Defendants Mr. Chung, Ms. Chung, and Dinh are not merely bystanders. They are the masterminds that schemed, planned, directed, initiated and controlled the illegal and fraudulent behavior.

69. Defendants Mr. Chung, Ms. Chung, and Dinh are well aware their conducted violated the TCPA and Tex. DPTA and refused to alter their behavior. Defendants are the sole directors of United, GSO Group, and Strategies and the only persons with the power to make the unlawful, fraudulent, and unethical behavior stop. Yet, they have taken no steps to stop the behavior because the behavior benefits them financially. Defendants break the law with their eyes and pocketbooks wide open.

70. Defendants Mr. Chung, Ms. Chung, and Dinh have operated as a common enterprise while engaging in the deceptive acts and practices and violations of law and formulated, directed, controlled, had the authority to control, or participated in the acts and practices of United, GSO Group, and Strategies that constitutes a common enterprise.

71.  Defendants Mr. Chung, Ms. Chung and Dinh should be held jointly and severally liable for both the TCPA violations and Tex. Bus. Com. Code 302.101 via the Tex. DTPA because they actually committed the conduct that violated the TCPA and Tex. DTPA, and/or they actively oversaw and directed this conduct.

72.  Defendants Mr. Chung, Ms. Chung, and Dinh should be held liable because to do otherwise would simply allow the individuals to simply dissolve United, GSO Group and Strategies and set up a new corporation and repeat their conduct.  This would result in both the TCPA and DTPA being unenforceable.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES

## AS A RESULT OF THE CALLS

73. Defendants' calls harmed the Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

74. Defendants' calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

75. Defendants' calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone line.

76. Defendants' calls harmed the Plaintiff by intruding upon Plaintiff's seclusion.

77. The Plaintiff has been harmed, injured, and damages by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of my cell phone.

### The Plaintiff's cell phone is a residential number

78. The calls were to the Plaintiff's cellular phone (915) 383-4604 which is the Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff

maintains no landline phones at his residence and has not done so for at least 15 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

## Violations of the Texas Business and Commerce Code 305.053

79. The actions of the Defendants violated the Texas Business and Commerce Code 305.053 by placing automated calls to a cell phone which violate 47 USC 227(b). The calls by the Defendant violated Texas law by placing calls with a pre-recorded message to a cell phone which violate 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e).

80. The calls by the Defendants violated Texas law by spoofing the caller ID's per 47 USC 227(e) which in turn violates the Texas statute.

## Violations of the Texas Business and Commerce Code § 302.101

81. The actions of the Defendants violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having registration certificate and bond on file with the Texas Secretary of State.

82. Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

## I.   FIRST CLAIM FOR RELIEF

### (Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))

1.      Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2.      The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to Mr. Callier's cellular telephone numbers without his prior express written consent.

3.      Mr. Callier is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

4.      Mr. Callier is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

5.      Mr. Callier also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

## II.   SECOND CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))

### (Against All Defendants)

1.      Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2.      The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

18

        a.      a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1);[2]

        b.      training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);[3] and,

        c.      in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

3.      Mr. Callier is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

4.      Mr. Callier is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

5.      Mr. Callier also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and AFS's name in the solicitations.

### III. THIRD CLAIM FOR RELIEF:

### Violations of The Texas Business and Commerce Code 305.053

1.      Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).

[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).

[4] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

2.      The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Mr. Callier's cellular telephone numbers without his prior express written consent in violation of 47 USC 227 et seq. The Defendant violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

3.      Mr. Callier is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

4.      Mr. Callier is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053**(c).

## IV.  FOURTH CLAIM FOR RELIEF

### (Violations of The Texas Business and Commerce Code 302.101)

1.   Mr. Callier incorporates the foregoing allegations as if set forth herein. by reference each and every allegation set forth in the preceding paragraphs.

2.   The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101**, by making non-registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

3.   Mr. Callier is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 302.302**.

4. Mr. Callier Callier is entitled to an award for all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees and attorney's fees.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the defendants jointly and severally as follows:

A.     Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.     A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C.     An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.     An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation for 40 calls.

E.     An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F.     An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

G.     An award to Mr. Callier of damages, as allowed by law under the TCPA;

H.     An award to Mr. Callier of interest, costs and attorneys' fees, as allowed by law and equity

I.     Such further relief as the Court deems necessary, just, and proper.

January 3, 2022,                         Respectfully submitted,

21

Brandon Callier
Plaintiff, Pro Se
6336 Franklin Trail
El Paso, TX 79912
915-383-4604